UNITED STATES of America,

v.

Lavinston LAMAR, Appellant.

No. 03–2273.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit LAR
34.1(a) Nov. 19, 2003.

Decided Jan. 20, 2004.

George S. Leone, Sabrina G. Comizzoli, Office of United States Attorney, Newark, NJ, for Appellee.

Robert N. Agre, Haddonfield, NJ, for Appellant.

Before RENDELL, BARRY, and CHERTOFF, Circuit Judges.

OPINION

CHERTOFF, Circuit Judge.

On November 21, 2002, Appellant Lavinston Lamar pled guilty to a one-count

criminal indictment charging him with possession with intent to distribute more than fifty (50) grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and 18 U.S.C. § 2. Lamar was sentenced to 120 months imprisonment for the underlying and related offenses. In this appeal, Lamar alleges that the District Court did not correctly apply the Sentencing Guidelines, namely in miscalculating his criminal history and refusing to apply the "Safety Valve" exception provided in U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f).

For the reasons set out below, we affirm the judgment of the District Court.

## I.

In July 2001, the Cumberland County, New Jersey Prosecutor's Office Narcotics Task Force and the Police Department of the City of Bridgeton, New Jersey, began a joint investigation into local narcotics dealing. In the course of this investigation, authorities learned that Lamar was dealing large amounts of crack cocaine in the area. Lamar was alleged to make frequent "runs" to Philadelphia or New York to purchase crack cocaine and then distribute his supply to dealers within Cumberland County.

On April 19, 2002, authorities arrested Lamar after finding five grams of suspected marijuana and a bag containing suspected crack cocaine in his vehicle. Lamar was charged with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On October 9, 2002, Drug Enforcement Agency Agents seized approximately 241.5 grams of cocaine and 31.8 grams of marijuana from Lamar's home. Over a month later, on November 21, 2002, Lamar entered a guilty plea in District Court to a one-count criminal indictment charging him with possession with intent to distribute more than fifty (50) grams of crack cocaine.

In addition to the underlying offense, Lamar was also held accountable, pursuant to U.S.S.G. § 1B1.3, for possessing 143.3 grams of cocaine hydrochloride that was seized from his home. Upon aggregation of the two drugs, Lamar's base offense level was determined to be 32. With a three-level reduction for acceptance of responsibility, Lamar's total offense level was reduced to 29. The parties stipulated in the plea agreement that there was no basis for any upward or downward departures.

The District Court accepted the Probation Office's recommendation that Lamar be assessed five criminal history points, which placed him in Criminal History Category III. Lamar's total offense level and Criminal History Category led to a 108 to 135 month sentence under the Guidelines. However, one offense to which he pled guilty, 21 U.S.C. § 841(b)(1)(A), provides a statutory minimum of ten years imprisonment. The District Court sentenced Lamar to the mandatory minimum sentence of 120 months imprisonment.

In this appeal, Lamar argues that the District Court erred in assessing his criminal history points and denying his request for a downward departure. He also argues that his sentence should have been reduced below the statutory mandatory minimum of ten years pursuant to U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f) (the "Safety Valve" exception).

## II.

The District Court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over challenges to the sentence because the judgment is a final order under 28 U.S.C. § 1291, and a defendant has a right to appeal under 18 U.S.C. § 3742(a). This Court reviews a district court's factual

findings for clear error. *United States v. Igbonwa*, 120 F.3d 437, 440 (3d Cir.1997); *United States v. Hillstrom*, 988 F.2d 448, 450 (3d Cir.1993). A district court's construction of the Sentencing Guidelines is subject to plenary review. *United States v. Swan*, 275 F.3d 272, 275 (3d Cir.2002).

Lamar first argues that his prior convictions place him in a criminal category that does not truly reflect the extent of his criminal record. Accepting the recommendation of the Probation Office, the District Court assigned five criminal history points to Lamar. In its Pre–Sentence Report, the Probation Office recommended that Lamar be assigned five points because he: (1) was adjudicated guilty of possession of a controlled dangerous substance (crack cocaine) as a juvenile for which he received 18 months of probation, *see* U.S.S.G. §§ 4A1.1(c) and 4A1.2(d)(2)(B) (adding one point) [PSR ¶ 51]; (2) was convicted of possession of a controlled dangerous substance (marijuana) for which he was fined $675, *see* U.S.S.G. § 4A1.1(c) (adding one point) [PSR ¶ 64]; (3) was convicted of Obstructing the Administration of Law/Government Function for which he was fined $130, *see* U.S.S.G. § 4A1.1(c) (adding one point) [PSR ¶ 68]; (4) was convicted of simple assault for which he was fined $125, *see* U.S.S.G. § 4A1.1(c) (adding one point) [PSR ¶ 70]; and (5) was convicted of possession of a controlled substance (less than 50 grams of marijuana for which he was fined $1,005), *see* U.S.S.G. § 4A1.1(c) (adding one point) [PSR ¶ 72]. Lamar concedes the assignment of the one criminal history point for his juvenile crack cocaine adjudication, i.e., PSR ¶ 51, but contests the treatment of the remaining convictions.

In determining a defendant's Criminal History Category, a sentencing court must add one criminal history point for certain prior convictions. U.S.S.G. § 4A1.1(c). A sentence for a misdemeanor or petty offense is included in the defendant's criminal history calculation unless it falls into a particular exception provided in section 4A1.2(c)(1).[1] The pertinent exception here is "[d]isorderly conduct or disturbing the peace." *See Id.*

Lamar claims that his simple assault charge, i.e., PSR ¶ 70, and his two offenses involving controlled dangerous substances, PSR ¶¶ 64 and 72, should fall within the "disorderly conduct or disturbing the peace" exception. He also contends that the conviction described in PSR ¶ 68 should also be excluded; he argues that because the conviction was a local ordinance violation, it does not even rise to the level of a disorderly persons offense.

Section 4A1.2(c) does not list "simple assault" or "possession of controlled dangerous substances" as exceptions. However, it provides that prior offenses can be excluded if they are found to be "similar to" one of the listed exceptions. The Guidelines do not define "similar." Lamar argues that his prior offenses are similar to "disorderly conduct" and asks this Court to consider the punishments accorded to the offenses under state law when determining the meaning of "disorderly conduct" under the Guidelines.

This approach, however, is contrary to the general rule that determining the meaning of "disorderly conduct" under the Guidelines is judged pursuant to federal law. *United States v. Elmore*, 108 F.3d 23, 25 (3d Cir.1997). A prior state offense is "similar" to the federal definition of

---

1. Section 4A1.2(c)(1) notes, "[s]entences for the following prior offenses and offenses similar to them ... are counted only if (A) the sentence was for a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense...." U.S.S.G. § 4A1.1(c).

disorderly conduct only if it contains the same elements, i.e., the "elements test." *See id.* at 27. In *Elmore,* this Court looked to Black's Law Dictionary and the Model Penal Code to identify elements of disorderly conduct. We noted, " '[d]isorderly conduct' is used to 'signify[ ] generally any behavior that is contrary to law, and more particularly such as tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality.' " *Id.* at 25 (quoting Black's Law Dictionary 469 (6th ed.1990)). A person can be guilty of disorderly conduct if he engages in activities "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof. . . ." *Id.* (quoting the Model Penal Code § 250.2(1)).

In *Elmore,* the defendant argued that his prior harassment conviction was sufficiently "similar" to disorderly conduct to warrant exclusion from his criminal history determination. In that case, we compared the definition of "harassment" in the Pennsylvania Code with the definition of "disorderly conduct" found in the Pennsylvania Code and in federal law. The Pennsylvania statute on harassment criminalized certain activity when done " 'with intent to harass, annoy or alarm *another person.*' " 108 F.3d at 26 (citing Pa.C.S.A. § 2709) (emphasis added). In contrast, the definition of "disorderly conduct" both in the Pennsylvania Code and in federal law encompassed activity that was performed with the purpose or intent " 'to cause *public* inconvenience, annoyance or alarm.' " 108 F.3d at 26 (citing Pa.C.S.A. § 5503 and Model Penal Code § 250.2(1)) (emphasis added).

■ In this case, Lamar was found guilty in New Jersey of "simple assault" after admitting getting into a fight with an individual and "knocking him out." ¶ PSR 71. The elements of simple assault under New Jersey law include "purposely, know-

ingly or recklessly caus[ing] bodily injury to another with a deadly weapon," or "[a]ttempt[ing] by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:12–1(a). Just as this Court in *Elmore* distinguished between activity directed at the public at large and against an individual, we follow the same logic in comparing Lamar's conviction of "simple assault" with the federal definition of "disorderly conduct."

■ Lamar's two convictions for possession of a controlled dangerous substance, PSR ¶¶ 64 and 72, also do not fall under the definition of "disorderly conduct" followed by this Court. The New Jersey statute under which Lamar was convicted states that "[i]t is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance. . . ." N.J.S.A. 2C:35–10(a). In *Elmore,* the Court noted, "conviction for a specific crime other than disorderly conduct demonstrates . . . that a defendant has done more than merely disturb the public order." 108 F.3d at 26. Here, too, Lamar's two drug possession convictions demonstrate that he has "done more than merely disturb the public order," and therefore is ineligible for the exception set out in section 4A1.2(c)(1) of the Guidelines.

Finally, Lamar argues that the Guidelines exclude his municipal violation for Obstructing Administration of Law/Government Function, PSR ¶ 68, as an offense to be counted toward his criminal history. U.S.S.G. § 4A1.2(c)(1). However, section 4A1.2(c)(1) does not exclude all "local ordinance violations" those local ordinance violations that are also criminal offenses under state law are included. *Id.* The New Jersey Code of Criminal Justice states that an offense found to obstruct administration of law or other governmental function may be considered a crime of the

fourth degree if "the actor obstructs the detection or investigation of a crime or the prosecution of a person for a crime...." N.J.S.A. 2C:29–1(b).

We need not address this issue. Even if the District Court inappropriately assigned one criminal history point for the municipal offense, Lamar's criminal history would remain within Category III because of the other four criminal history points. *See* U.S.S.G. ch. 5, pt. A.

Lamar's remaining arguments are baseless. He claims that the District Court erred in not departing downward from the Guidelines. He argues that "the District Court did not address [his] argument that placing him in Category III significantly overstates the true extent of his criminal record. The Court, therefore, did not exercise the discretion to so depart under the Guidelines." (Appellant Br. at 24). Lamar also intimates that the District Court did not understand its legal authority to depart from the Guidelines.

■ First, the record makes clear that the District Court did in fact acknowledge Lamar's objections to the assignment of his Criminal History Points and his Criminal History Category. The District Court exercised its discretion not to depart from the Guidelines in this matter, and this Court lacks jurisdiction to review this decision. *United States v. McQuilkin,* 97 F.3d 723, 729 (3d Cir.1996).

Finally, Lamar contends that the District Court erred in denying his application for the "Safety Valve" exception pursuant to U.S.S.G. § 5C1.2. He is incorrect. Defendants with more than one Criminal History Point are not eligible for the "Safety Valve" exception provided in section 5C1.2(a)(1). Given that the District Court correctly assigned Lamar more than one Criminal History Point, he was ineligible for the exception.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.